IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACOB MATTERN, Individually and as Special Administrator of the Estate of MARK MATTERN, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERTS SINTO CORPORATION,,<br><br>    Defendant/Third-Party Plaintiff,<br><br>vs.<br><br>CENTURY BRASS WORKS, INC.<br><br>    Third-Party Defendant. | Case No. 24-cv-422-DWD |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

    This matter is before the Court on Third-Party Defendant Century Brass Works, Inc.'s ("Century Brass") Motion to Dismiss Count IV of Roberts Sinto Corporation's ("Roberts Sinto") Third-Party Complaint against Century Brass, or in the Alternative, to Compel Arbitration. (Doc. 56). Roberts Sinto has filed a Response (Doc. 67), and Century Brass has filed a Reply (Doc. 68). The Court held a hearing on April 22, 2025. (Doc. 86). Following the hearing, the Court directed the parties to provide supplemental briefing regarding ripeness and its impact on subject matter jurisdiction. (Doc. 89). The parties filed the supplemental briefing on June 2, 2025. (Docs. 90, 93). For the reasons that follow, the Motion is **GRANTED** in **PART**.

I.    BACKGROUND

Decedent Mark Mattern ("Mattern") was employed by Century Brass, at a foundry that Century Brass owned and operated in Swansea, Illinois. (Doc. 62 ¶ 4). On September 2, 2022, Mattern was working with Roberts Sinto's automatic molding machine ("Molding Machine") at Century Brass's facility when he was fatally crushed by a mold lifter. (Doc. 62 ¶ 6). Plaintiff Jacob Mattern alleges that Roberts Sinto provided on-site training, maintenance, repair, and safety consulting services to Century Brass (Doc. 62 ¶ 18) and that the Molding Machine was defective, unreasonably dangerous, and/or malfunctioned on the day of Mattern's death. (Doc. 62).

Roberts Sinto claims that the Molding Machine was frequently repaired by Century Brass employees and that Mattern was killed while attempting to perform maintenance on the machine, which was being operated by an inexperienced employee. (Doc. 42 ¶¶ 7, 8). Roberts Sinto further asserts that neither Mattern nor the operator had received proper training in lock-tag/out procedures or the correct de-energization of the Molding Machine. (Doc. 42 ¶ 9).

Century Brass purchased the Molding Machine in 2006. (Doc. 42-1). The purchase contract includes an indemnification clause and an arbitration provision. (Doc. 42-1, pgs. 188-89). According to Roberts Sinto, discovery has revealed that Century Brass was negligent in training its employees and in establishing and enforcing safety protocols. As a result, Roberts Sinto filed an Amended Third-Party Complaint against Century Brass, asserting three negligence claims and seeking contribution. (Doc. 42). Additionally,

Count IV of the Third-Party Complaint alleges breach of contract, claiming entitlement to contractual indemnification under the 2006 purchase contract. (*Id.*).

## II. PURCHASE AGREEMENT – RELEVANT PROVISIONS

**Indemnification Clause**

> Customer agrees to indemnify and hold RSC harmless from and against any claims resulting from or damages arising parties due to Customer's modifications, changes, alterations, or inadequate maintenance of this equipment, or operations not in accordance with defined instructions issued with the equipment by the Customer, from Customer's failure to maintain and provide its employees with Operator's manuals and warnings, or from any other negligent or intentional act or omission of Customer's employees, agents, or representatives. Customer further agrees to indemnify RSC for any attorney fees and actual costs incurred in the defense of such a suit.

**Choice of Law Clause**

> Customer agrees that the provisions of the Uniform Commercial Code for the State of Michigan shall govern the rights, responsibilities and remedies of the parties hereunder.

**Arbitration Clause**

> It is expressly agreed that any dispute regarding this Contract, the failure of equipment to meet Customer satisfaction or any other contingency, shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association as interpreted and applied under the laws of the State of Michigan. The parties may obtain discovery as provided in subchapter 2.300 of the Michigan Court Rules of 1991, or any successor rules. The arbitration hearing shall be held in Ingham County, Michigan. The award shall be final and binding, and judgment thereon may be entered in any court, state or federal, having jurisdiction.

### III.     PARTIES' ARGUMENTS

In its Motion to Dismiss or Compel Arbitration (Doc. 56), Century Brass contends Count IV of Roberts Sinto's Third-Party Complaint should be dismissed because: (1) Roberts Sinto failed to provide timely notice of its intent to enforce the indemnification clause; (2) the 2006 purchase contract was fully performed in 2007 and, without a survival clause, the indemnification provision lapsed upon full performance; and (3) the claim is barred by the statute of limitations. Century Brass contends it is proper for the Court – not an arbitrator – to resolve these arguments. (*Id*.). Finally, should the Court decline to dismiss, Century Brass seeks to stay Count IV and compel arbitration. Century Brass does *not* dispute that a valid contract was formed in the first instance or that the dispute falls within the contract's arbitration clause.

Roberts Sinto counters that the indemnification clause remains enforceable, as neither the clause nor the contract specifies a limitation period or notice requirement. It further argues that the indemnification claim is not barred by the applicable statute of limitations because, under Michigan law, indemnification claims accrue only upon payment of damages. However, Roberts Sinto contends it is inappropriate for the Court to resolve these matters. According to Roberts Sinto, the arguments raised by Century Brass —notice, lapse, and timeliness—are procedural and must be resolved by an arbitrator. Century Brass disagrees, arguing that because notice, lapse, and timeliness are raised as defenses to the underlying claim, not defenses to arbitration, they must be resolved by the Court and not an arbitrator.

4

In its reply brief, Century Brass raises an additional argument: if, as Roberts Sinto claims, the indemnity claim has not yet accrued, it is not ripe for adjudication and should be dismissed. Century Brass briefly reiterated this point during oral argument but provided no supporting analysis or authority. Neither party addressed whether ripeness is a question for the arbitrator or the Court.

Normally, perfunctory and undeveloped arguments are considered waived. *Perry v. Sullivan,* 207 F.3d 379, 383 (7th Cir. 2000). However, after conducting independent research, the Court noticed a possible jurisdictional issue, and jurisdictional issues cannot be waived. *See Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (where ripeness "implicates the possibility of [a court] issuing an advisory opinion, [it] is a question of subject matter jurisdiction under the case-or-controversy requirement," and cannot be waived). Specifically, the Supreme Court has explained that "§ 4 of the FAA does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have save for the arbitration agreement." *Vaden v. Discover Bank*, 556 U.S. 49, 66, 129 S. Ct. 1262, 1275, 173 L. Ed. 2d 206 (2009). Applying *Vaden's* holding to a case like the instant case, the Fifth Circuit held:

> *Vaden*'s holding necessarily implies that any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute—*e.g.*, ripeness—would similarly prevent a district court from having jurisdiction to compel arbitration. Put another way, given *Vaden*'s holding that the district court should assume the absence of an arbitration agreement in determining whether there is jurisdiction over the underlying dispute, it necessarily follows that, if the underlying dispute is not ripe, then the district court would not have jurisdiction to compel arbitration.

*Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017).

The Court directed the parties to file supplemental briefing addressing this authority. (Doc. 89). The parties submitted their briefs on June 2, 2025. (Docs. 90, 93). In its supplemental briefing, Century Brass argues that, under Seventh Circuit precedent, a straightforward breach of contract claim for indemnification is not ripe until judgment is rendered. (Doc. 90). Thus, Century Brass contends that Vaden requires dismissal of Count IV for lack of subject matter jurisdiction. (Doc. 90). In its briefing, Roberts Sinto states it found no post-*Vaden* authority indicating that ripeness should be decided by an arbitrator. (Doc. 93). However, citing Fifth Circuit precedent, Roberts Sinto argues that Count IV is ripe for adjudication due to the "immediacy and reality of Plaintiff's litigation against [Roberts] Sinto." (Doc. 93). Accordingly, Roberts Sinto argues, the claim is not subject to dismissal for lack of jurisdiction.

## IV.   APPLICABLE LAW

The FAA mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Arbitration should be compelled under the FAA when "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citing 9 U.S.C. §§ 3–4).

Courts are responsible for deciding whether an agreement to arbitrate exists before ordering arbitration. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010). Once

a court is satisfied that an agreement to arbitrate exists, the FAA instructs the court to stay proceedings on issues subject to arbitration and compel arbitration pursuant to the agreement. *Clark v. Snap, Inc.*, No. 3:21-CV-9-DWD, 2021 WL 2376359, at *3 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022).

## V.   DISCUSSION

The parties agree that a valid arbitration agreement exists and that Roberts Sinto's indemnification claim falls within its scope. Century Brass, however, seeks dismissal of Count IV based on four defenses: (1) lack of timely notice of intent to enforce the indemnification clause, (2) lapse of the indemnification provision due to full performance of the 2006 contract, (3) expiration of the statute of limitations, and (4) lack of ripeness. Century Brass maintains that, because these defenses pertain to the underlying claim's validity, they should be resolved by the Court, and that the claim should only be referred to arbitration if the Court finds dismissal is not warranted. Roberts Sinto counters that these are procedural issues for the arbitrator, given the undisputed arbitrability of Count IV. Thus, as a threshold matter, the Court must determine whether these issues are for the Court or the arbitrator to decide, with particular attention to ripeness, which may implicate subject matter jurisdiction.

### A. Procedural Defenses – Statute of Limitations, Notice, and Lapse

The Supreme Court has long recognized that once arbitrability is established, procedural questions arising from the dispute and bearing "'on its final disposition'" are presumptively for the arbitrator to decide. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). In *Wiley*, the Court addressed whether procedural prerequisites to

7

arbitration—such as adherence to a multi-step grievance process—fall within the purview of the court or the arbitrator. The Court reasoned that such procedural issues are often "intertwined" with the merits of the dispute, rendering it impractical and illogical to divide authority between judicial and arbitral forums. Accordingly, the Court held that procedural matters arising out of the dispute should be resolved by the arbitrator. *Id.*

Similarly, in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court addressed the division of responsibility between courts and arbitrators. Courts decide "gateway" issues—such as whether an arbitration agreement exists or applies to a particular dispute. *Id.* at 83–84. However, procedural questions arising under an arbitration agreement, including matters such as "time limits" and "notice," are presumptively for the arbitrator to resolve—even when such questions might preclude arbitration altogether. *Id.* at 84–85. The Court specifically held that interpreting a six-year time limit within the agreement was a procedural issue for the arbitrator, as it related to the disposition of the underlying dispute. *Id.* See also *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (noting that doubts concerning arbitrability should be resolved in favor of arbitration, including defenses such as "waiver, delay, or a like defense to arbitrability").

Although *Wiley* and *Howsam* involved procedural prerequisites to arbitration, federal courts applying these decisions have consistently held that procedural challenges to the underlying claim, including timeliness and related defenses, are likewise for the arbitrator to decide. This is because such issues often raise factual questions intertwined

8

with the merits of the dispute, placing them within the arbitrator's domain. *See*, e.g., *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580–81 (7th Cir. 2006) (holding that procedural defenses, including "waiver, delay, or a like defense to arbitrability," are for the arbitrator, and that courts may only decide whether the dispute is subject to arbitration); *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 176 (7th Cir. 1987) (once arbitrability is established, "procedural shortcomings" affecting the claim's disposition fall to the arbitrator); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (procedural issues—including statutes of limitations, notice requirements, laches, and estoppel—arise after an obligation to arbitrate is found and are reserved for the arbitrator); *Kristian v. Comcast Corp.*, 446 F.3d 25, 43–44 (1st Cir. 2006) (conflict between statutory and contractual limitations periods, and whether tolling applies due to an ongoing injury, were both for the arbitrator); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) (distinguishing between threshold issues for the court and procedural or merits-based challenges, such as statute of limitations or laches, which are for the arbitrator absent contrary agreement); *Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 324 (2d Cir. 2021) (where the contract lacks express language assigning timeliness issues to the court, the arbitrator must decide whether the statute of limitations bars the claim); *Smith v. Dean Witter Reynolds, Inc.*, No. 02-6158, 2004 WL 1859623, at *3 (6th Cir. Aug. 18, 2004) (under *Howsam*, arbitrator determines whether statutory time bar should be tolled); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991) (holding that "*any* limitations defense—whether stemming from the arbitration agreement,

9

arbitration association rule, or state statute—is an issue to be addressed by the arbitrators") (emphasis in original).

Century Brass argues that defenses such as the statute of limitations, lack of notice, and lapse of the indemnification provision pertain to the underlying claim's validity, not arbitrability, and thus the Court must resolve them before compelling arbitration. This argument misinterprets *Wiley* and *Howsam*. The Supreme Court's reasoning extends beyond procedural prerequisites for initiating arbitration (e.g., time limits for filing an arbitration demand) to encompass procedural issues that "grow out of the dispute" and affect its final disposition, including defenses that could bar the claim itself. *Wiley*, 376 U.S. at 557; *Howsam*, 537 U.S. at 84–85. Century Brass's defenses—lack of notice, lapse of the indemnification provision, and statute of limitations—require interpreting the contract's terms (e.g., notice requirements, survival of provisions, or claim accrual) and assessing the claim's procedural viability. These tasks are intertwined with the merits and thus reserved for the arbitrator. Accordingly, these three defenses will not be resolved by the Court.

### B. Ripeness[1]

"Article III of the U.S. Constitution limits the authority of the federal courts to 'cases or controversies.' " *Rock Energy Co-op. v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) (quoting *Smith v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994)). "The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems." *The Church of Our Lord and Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 676 (7th Cir. 2019) (citing *Wis. Right of Life State Political Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011)). *See also Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (Ripeness ensures that courts address only "actual, concrete conflicts" rather than "hypothetical, speculative, or illusory disputes."). A claim is unripe—and therefore non-justiciable—when it would require the court to issue an advisory opinion. *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). *See also Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (a claim is unripe if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all.").

---

[1] The contract includes a choice-of-law provision providing for the application of Michigan law. But, for purposes of evaluating whether the federal jurisdictional requirement of ripeness is satisfied, federal law – not state law – controls. *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir.2003). Thus, whether the indemnification is premature thereby depriving this Court of subject matter jurisdiction, is governed by federal law. *See* e.g., *St. Paul Mercury Ins. Co. v. Com. Prop. Assocs., Inc.*, No. 04 C 3534, 2005 WL 1126883, at *2 (N.D. Ill. May 10, 2005). The Court notes, however, that Michigan law appears to be in alignment with federal law as to when an indemnification claim is ripe for adjudication. *See* e.g. *Berdel v. Progressive Michigan Ins. Co.*, No. 302954, 2011 WL 5072928 (Mich. Ct. App. Oct. 25, 2011) (indemnification claim not ripe where it rested on contingent future events that "may not occur as anticipated, or may not occur at all.").

11

The indemnification clause at issue imposes a duty to indemnify and not a duty to defend.[2] Further, the clause expressly provides that the duty to indemnify is triggered only if a claim arises from specific conduct attributable to Century Brass – such as "modifications, changes, alterations, or inadequate maintenance of [the] equipment," failure to provide warnings or manuals, or other negligent or intentional acts or omissions by Century Brass's employees or agents.[3] The clause further provides for indemnification of attorney's fees and costs, but only "in the defense of such a suit" – i.e., a suit arising from Century Brass engaging in the types of conduct specified in the clause.

At this stage, however, no such findings have been made. Roberts Sinto has not yet been found liable in the underlying litigation, nor is there any indication that Century Brass intends to refuse to indemnify Roberts Sinto if liability is imposed. Further, it has not yet been determined what caused Mattern's injury, or whether Century Brass engaged in any of the conduct that would trigger indemnification under the clause. The underlying claim may result in a finding of no liability at all, or in a judgment based on a theory unrelated to Century Brass's conduct (such as conduct attributable to Roberts

---

[2] It is important to distinguish between an alleged duty to defend and an alleged duty to indemnify. Generally, "a duty to defend requires the obligor to cover the costs of litigation once an action is filed, and regardless of the obligee's ultimate liability, while a promise to indemnify takes effect only after liability has been determined, and may or may not cover the costs of litigation." *C & K NuCo, LLC v. Expedited Freightways, LLC, No. 13 C 4006,* 2014 WL 4913446, at *7 (N.D. Ill. Sept. 30, 2014). *See also Meridian,* 441 F.3d at 538 ("[A] dispute about an insurer's duty to indemnify generally is not ripe for decision until the insured has been called on to pay—for until then the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is uncertain."); *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d 334, 338 (7th Cir.1992) (the "duty to indemnify will, as the district court logically determined, depend upon the facts of each suit").

[3] Some indemnity clauses are broad and unconditional, requiring indemnification for any claim arising out of a relationship, regardless of fault. In such cases, liability alone may trigger the obligation. But here, the indemnity clause is narrow and fault-based – it is triggered only if the claim arises from Century Brass's own conduct. As a result, in this case, the indemnity claim is contingent on both (1) a finding of liability and (2) a finding that the liability arose from specific conduct – neither of which has occurred.

Sinto and not Century Brass). Thus, both the existence of liability and the factual predicates for indemnity are uncertain and contingent.

Additionally, even though Roberts Sinto has already incurred legal expenses, the clause does not create a duty to reimburse those costs unless and until the conditions triggering indemnity are satisfied – namely, a finding that the claim arose from Century Brass's own conduct, such as alterations or negligence. Whether the underlying claim falls within the scope of the indemnity provision cannot be determined until liability is established and the cause of Mattern's injury is known. As a result, the breach of contract claim is contingent on a liability finding that may never materialize.

Under Seventh Circuit precedent, such claims are not ripe. See *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (a claim is unripe if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all."); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("A duty-to-indemnify claim is not ripe until the insured has been held liable."); *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated."). *See also Medline Industries, Inc. v. Ram Medical, Inc.*, 892 F.Supp.2d 957, 966 (N.D. Ill. 2012) (breach of duty to indemnify, arising out of contract between distributor and purchaser, would not be ripe until liability in the underlying personal injury suits had been established).

Next, the Court must determine whether ripeness impacts jurisdiction. Whether ripeness is jurisdictional depends on the nature of the justiciability concern. In some

contexts, ripeness reflects prudential considerations and may be treated as a matter of timing. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006);[4] *Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010). However, where the absence of ripeness would require the court to issue a decision on a hypothetical or speculative future dispute, ripeness becomes a question of subject matter jurisdiction. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) ("When ripeness implicates the possibility of the Court issuing an advisory opinion, it is a question of subject matter jurisdiction."); *Kathrein v. City of Evanston*, 636 F.3d 906, 915 (7th Cir. 2011) (unripe claims must be dismissed for lack of jurisdiction).

That is the case here. Because liability in the underlying suit is unresolved, and there has been no finding that would trigger the specific indemnification obligations described in the contract, any judicial determination of the indemnification obligation would be speculative and advisory—precisely the outcome Article III forbids. See *Lear*, 353 F.3d at 583 ("A declaration that A must indemnify B if X comes to pass has an advisory quality ... it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant.").

Where ripeness implicates Article III jurisdiction—as it does here—it must be resolved by the court, not the arbitrator. *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009),

---

[4] *Sadowski*, which recognizes that ripeness is sometimes treated as a matter of discretion rather than jurisdiction, is distinguishable from the instant case. In *Sadowski*, the court addressed both a duty to defend and a duty to indemnify in a declaratory judgment action where an actual controversy existed. 441 F.3d at 538–39. The present case involves only a breach of contract claim for indemnification, untethered from any current obligation or dispute. Unlike *Sadowski*, there is no presently justiciable controversy to adjudicate, and no parallel duty to defend.

14

makes clear that federal courts may compel arbitration under the FAA only if they have independent subject matter jurisdiction over the underlying dispute. See also *Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017) (court lacked jurisdiction to compel arbitration because underlying claim was not ripe); *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011) (reversing district court's determination as to non-signatory parties' right to enforce an arbitration clause because issue was not ripe, making the court's determination advisory).

Because Count IV is unripe and its adjudication would require the Court to issue an advisory opinion, the Court lacks Article III subject matter jurisdiction over the claim. Accordingly, Count IV must be dismissed without prejudice.[5]

## V.    CONCLUSION

For the reasons set forth herein, the lack of ripeness as to Count IV deprives the Court of jurisdiction over that claim, as required by Article III. Accordingly, the Motion to Dismiss for Failure to State a Claim or to Compel Arbitration as to Count IV (Doc. 56)

---

[5] Because the breach of contractual indemnity claim is not justiciable, dismissal is appropriate. *Med. Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010); *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir.1995).

is **GRANTED** in **PART**. Count IV is dismissed without prejudice for lack of subject matter jurisdiction.

      **SO ORDERED.**

      Dated: June 26, 2025

                                                              _____
                                                              DAVID W. DUGAN
                                                              United States District Judge